UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GWEN SAMPSON,

    Plaintiff,

v.                                                  Case No:   2:14-cv-713-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Gwen Ann Sampson's Complaint (Doc. 1) filed on December 10, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **reversed and remanded** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.     Procedural History

On December 9, 2010, Plaintiff filed an application for disability insurance benefits asserting an onset date of July 23, 2009. (Tr. at 54, 55, 130-33). Plaintiff's applications were denied initially on May 6, 2011, and on reconsideration on July 25, 2011. (Tr. at 54, 55). A hearing was held before Administrative Law Judge ("ALJ") Ronald S. Robins on April 16, 2013. (Tr. at 31-53). The ALJ issued an unfavorable decision on May 31, 2013. (Tr. at 13-23). The ALJ found Plaintiff not to be under a disability from July 23, 2009, through the date of the decision. (Tr. at 23).

On November 12, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 10, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 2009, the alleged onset date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease of the right thumb, degenerative disc disease of the lumbar and cervical spine with back pain, history of rheumatoid arthritis, history of breast cancer, history of angina, and hepatitis C. (Tr. at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 17). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as follows:

> The claimant is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. The claimant is unable to climb ladders, ropes, and scaffolds and is unable to crawl. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant is limited to occasional bilateral overhead reaching. The claimant is unlimited with regard to gross manipulation (handling). The claimant is limited to occasional to frequent with regard to fine manipulation of the left hand (non-dominant hand), unlimited with regard to the dominant right hand, and unlimited with regard to feeling. The claimant needs to

3

>avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights. Frequently is defined as less than 2/3 of an 8-hour workday and occasionally is defined as less than 1/3 of an 8-hour workday.

(Tr. at 17). The ALJ determined that Plaintiff is capable of performing her past relevant work as a bank teller and customer service representative in the financial sector, finding that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 23). The ALJ concluded that Plaintiff was not under a disability from July 23, 2009, through the date of the decision. (Tr. at 23).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at

1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises three issues. As stated by Plaintiff, they are:

1) The ALJ failed to consider evidence of record that establishes that Sampson has bilateral manipulative limitations, when a vocational expert testified that Sampson's problems with her hand preclude all work, such that she is disabled.

2) The ALJ failed to apply proper legal standards when evaluating the medical opinions, and substantial evidence does not support his opinion weight findings.

3) The ALJ failed to apply proper legal standards when evaluating the credibility of Sampson's statements about her pain, and substantial evidence does not support the ALJ's finding that Sampson is not credible.

(Doc. 14 at 1). The Court will consider each issue in turn.

**A. Bilateral Manipulative Limitations**

Plaintiff argues that the ALJ erred in failing to include manipulative limitations in Plaintiff's RFC. Plaintiff asserts that there is an inconsistency in the ALJ's decision regarding hand impairments. Plaintiff contends the ALJ found that Plaintiff suffered from severe right thumb degenerative joint disease, yet the RFC contained limitations as to fine manipulation with the left hand only. Further, Plaintiff argues that if the ALJ found a severe limitation in Plaintiff's right thumb, the RFC "must include limitations in the use of her right hand." (Doc. 14 at 12). Plaintiff claims that the ALJ ignored medical evidence from rheumatologist Dr. Clark in December 2011 that found not only left-thumb tenderness but also bilateral joint pain in Plaintiff's thumbs. The Commissioner responds that the ALJ properly considered the medical evidence relating to any limitations in Plaintiff's thumbs, any error was a scrivener's error, and

5

the vocational expert was provided an accurate hypothetical relating to Plaintiff's limitations as to fine manipulation.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, to decide whether the claimant is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. §404.1520(e). An ALJ must consider all of a claimant's mental impairments that are sufficiently severe in combination with all of a claimant's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

In the decision, the ALJ determined that Plaintiff had the severe impairment of degenerative joint disease of the right thumb at step two of the sequential evaluation. (Tr. at 15). Later in the decision, the ALJ set forth Plaintiff's RFC finding that Plaintiff was "limited to occasional to frequent with regard to fine manipulation of the left hand (non-dominant hand), unlimited with regard to the dominant right hand, and unlimited with regard to feeling." (Tr. at 17). As Plaintiff indicated, there is a discrepancy in the decision. However, the error appears to be a scrivener's error at step two of the sequential evaluation where the ALJ inadvertently stated "right thumb." After the RFC finding, the ALJ discusses Plaintiff's pain in her left thumb. (Tr.

at 20). The Court determines that the scrivener's error at step two was harmless error. Due to this scrivener's error, Plaintiff argues that the ALJ erred in failing to include limitations in Plaintiff's RFC relating to her right thumb, which was in error because the ALJ found that Plaintiff had a severe impairment relating to her right thumb. The Court determines that the ALJ inadvertently stated "right thumb" rather than "left thumb" at step two. Therefore, even if the ALJ had a duty or obligation to include a limitation as to the right thumb, he did not err.

Plaintiff argues that the ALJ erred in failing to acknowledge that in December 2011 during Dr. Clark's examination of Plaintiff's hands, Plaintiff complained of joint pain in both of her thumbs. Jack Clark, D.O. examined Plaintiff on December 7, 2011. (Tr. 420-24). At the examination, Dr. Clark noted that Plaintiff had no joint synovitis. (Tr. at 421). Dr. Clark reported that Plaintiff had "severe [] interphalangeal joint pain, with passive pressure upon the proximal phalanx of the bilateral thumb location of the cyst pain localizing to the IP joint itself but there is no radiation of pain into the pollicis extensor tendon at the wrist, distal radial forearm." (Tr. at 421). An x-ray ordered by Dr. Clark found that Plaintiff had "mild changes of osteoarthritis at the first CMC joints. No acute abnormalities. No evidence of inflammatory arthropathy." (Tr. at 418).

The ALJ did not mention Dr. Clark's medical records or the x-ray. The x-ray showed Plaintiff to have osteoarthritis in both hands, and Dr. Clark noted that Plaintiff had severe pain in her interphalangeal joints. The ALJ did not review or weigh the opinion of Dr. Clark concerning Plaintiff's hands. Although the ALJ is not required to review every piece of evidence in his decision, the Court is unable to determine if the ALJ considered Dr. Clark's medical records concerning Plaintiff's bilateral osteoarthritis. Given the ALJ's apparent lack of review of Dr. Clark's records, the Court is unable to conduct a meaningful judicial review of the ALJ's opinion

concerning his conclusion that Plaintiff does not have bilateral manipulative limitations. *See Robinson v. Astrue*, No. 8:08-CV-1824-T-TGW, 2009 WL 2386058, at *4 (M.D. Fla. Aug. 3, 2009). Thus, the Court finds that the ALJ erred in failing to consider Dr. Clark's opinion.

The Court determines that the ALJ erred in finding at step two of the sequential evaluation that Plaintiff had "degenerative joint disease of the right thumb" rather than the left thumb. However, this error was a scrivener's error as evidenced by the RFC including limitations as to Plaintiff's left hand. The Court finds that this error was harmless. However, the Court finds that the ALJ erred in failing to consider Dr. Clark's medical records concerning Plaintiff's bilateral manipulative limitations. Thus, the ALJ's decision as to Plaintiff's manipulative limitations is not supported by substantial evidence, and this action must be remanded.

### B. Weight of medical opinions

Plaintiff argues that the ALJ erred in affording the opinion of Dr. Schreiber little weight, in finding Dr. Laufer's opinion was unsupported by objective medical evidence, and in affording great weight to the opinion of Dr. Goodpasture, a non-examining medical consultant. The Commissioner responds that the ALJ afforded proper weight to the medical opinions of record.

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it

and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Even though examining and non-examining doctors' opinions are not entitled to deference, nevertheless an ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v.*

*Bowen*, 814 F.2d 617, 619 (11th Cir.1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). To evaluate a medical source, the same criteria are used whether the medical source is a treating or non-treating doctor, with the following elements to be considered: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted).

Plaintiff argues that the ALJ reviewed Plaintiff's Lumbar MRI of January 2010 revealing degenerative disc disease at L4-5 and L5-S1 with foraminal stenosis at L5-S1, but ignored the fact that the L4-5 and L5-S1 areas are the areas where Plaintiff had surgery in 2006. Additionally, Plaintiff argues that the ALJ reviewed the October 2010 cervical MRI revealing hypertrophy, foraminal compromise, and spondylosis, but ignored that the cervical MRI showed a flattening of the spinal cord and recurrent right hypertrophy with partial effacement of the cerebrospinal fluid and foraminal compromise at C5-6, which is the level of Plaintiff's surgery in 2006. Plaintiff claims that this evidence shows that Plaintiff had abnormalities in her spine causing pain that was so severe she required surgeries, and despite these surgeries, she still had abnormalities of the spine.

The ALJ reviewed Plaintiff's medical records including her surgery on June 10, 2008. (Tr. at 19). The ALJ noted that the surgery involved removing instrumentation at L4 to S1 with bone morphogenic protein onlay fusion at L4 to S1. (Tr. at 19). The ALJ also reviewed Plaintiff's cervical surgery records from 2006. (Tr. at 19). The ALJ reviewed Plaintiff's MRIs performed on January 6, 2010 and on October 21. 2010, and x-rays taken on January 25, 2010. (Tr. at 19). The summary of these records is sufficient to determine that the ALJ did review these records, and considered them when making his findings. The ALJ found that Plaintiff was

not receiving the type of medical treatment that is expected for someone who is totally disabled, and found generally that many of Plaintiff's diagnostic test results and physical examinations "were normal or showed only slight limitations." (Tr. at 19). Plaintiff then jumps to the conclusion that the ALJ characterized the MRI results as showing only slight limitations. The ALJ was speaking generally and not referring to specific MRI results. The Court finds that the ALJ did review and consider Plaintiff's objective medical testing.

Plaintiff argues that the ALJ ignores Dr. Schreiber's examination findings, and concludes that Plaintiff's physical examination results were normal or showed only slight limitations. After the surgeries, the ALJ noted that Plaintiff received essentially routine and/or conservative treatment that included pain management and physical therapy. (Tr. at 19). The ALJ reviewed the treatment notes of Peter Schreiber, D.O. (Tr. at 19, 372-81, 580-85). After review of Dr. Schreiber's treatment notes, the ALJ summarized the medical records finding that Plaintiff's medications have been relatively effective in controlling her symptoms, that Plaintiff was getting benefit from them, and not experiencing any serious adverse effects. (Tr. 19). Upon review of Dr. Schreiber's records, the ALJ's summary is accurate as to Dr. Schreiber's impressions. (Tr. at 372-81, 580-85).

Dr. Schreiber treated Plaintiff with pain management from approximately May 2011 through December 2012. On January 31, 2011, Dr. Schreiber completed a Physical Capacity Evaluation. Dr. Schreiber concluded that Plaintiff was unable to stand or walk at one time for at least an hour in an 8-hour workday; could stand/walk for 1 hour throughout an 8-hour workday; could sit for 1 hour at one time in an 8-hour workday; could sit for 3 hours throughout an 8-hour workday; could lift up to 10 pounds occasionally; could use hand for repetitive grasping, pushing, pulling and fine manipulation; could use feet for repetitive movements; could not bend,

11

squat crawl, or climb; and could reach above shoulder level. (Tr. at 282-83). The ALJ affords Dr. Schreiber's opinion little weight regarding Plaintiff's functional and physical limitations finding that this opinion was inconsistent with and unsupported by medical evidence of record. (Tr. at 21). The ALJ found that limiting Plaintiff to less than sedentary work is unsupported by the objective medical evidence, physical examinations, x-rays, MRIs, and is inconsistent with Plaintiff's reports of activities of daily living. Plaintiff testified that she does laundry, takes her dog for a walk around one block, reads, dusts one room and then takes a break, takes out the trash, drives, and is able to visit friends, and go to church. (Tr. at 39-40). The ALJ stated the weight he afforded Dr. Schreiber's opinion, and he supported it with specific reasons why he was affording Dr. Schreiber's opinion little weight. Substantial evidence in the record supports the ALJ's decision to afford Dr. Schreiber's opinion as to Plaintiff's functional and physical limitations little weight.

Similarly, the ALJ discounted Dr. Laufer's opinion, finding that it was unsupported by the record. (Tr. at 22). On December 16, 2010, Michael Laufer, M.D. completed a Physical Capacity Evaluation (Tr. 617-18). Dr. Laufer found that Plaintiff could stand/walk for 1 hour at a time in an 8-hour workday; stand/walk for 4 hours throughout an 8-hour workday; could sit for 1 hour or less at one time in an 8-hour workday; could sit for 3 hours throughout an 8-hour workday; could lift up to 10 pounds occasionally; could use hands for grasping, pushing, pulling and fine manipulation; could use feet for repetitive movements in operating foot controls; could occasionally bend; could never squat, and crawl; could occasionally climb stairs; and could reach above shoulder level. (Tr. at 617-18). In a very cursory manner, the ALJ stated that in Dr. Laufer's treatment records, Dr. Laufer found Plaintiff to be permanently disabled. (Tr. at 22). Unlike with Dr. Shreiber's treatment records, the ALJ did not summarize or mention specifically

12

any of Dr. Laufer's treatment notes. The ALJ simply concluded that Dr. Laufer's opinion was unsupported by the objective medical evidence, but failed to indicate that he reviewed the treatment notes, other than the conclusion that Dr. Laufer reached that Plaintiff was permanently disabled. Dr. Laufer was one of Plaintiff's treating physicians, and as such, the ALJ was required to specify the weight he afforded to Dr. Laufer's opinion, and the specific reasons why Dr. Laufer's opinion was given little weight. Therefore, the Court finding that the ALJ erred in failing to specify the weight afforded to Dr. Laufer's opinion, and the specific reasons for finding it was unsupported by the objective medical evidence and other evidence of record.

Plaintiff next argues that the ALJ did not address an evaluation done in March 2010 by physical therapist, Dexter Mulles. The Commissioner responds that a physical therapist is not an acceptable medical source and cannot establish the existence of a disability, but is considered an "other source," and these records may be used to show the severity of an impairment and how it affects the ability to work. Physical therapists are not considered "acceptable medical sources," but are considered "other sources." *Berry v. Astrue*, No. 509-CV-328-OC-GRJ, 2010 WL 3701392, at *8 (M.D. Fla. Sept. 15, 2010). Evidence from a physical therapist cannot establish a disability, but should be evaluated on issues such as impairment severity and functional effects in combination with the other evidence of record. *Id*.

On March 18, 2010, Plaintiff was evaluated by a physical therapist. (Tr. at 230-31). The physical therapist completed a thorough examination of Plaintiff. (Tr. at 230-31). The physical therapist reviewed Plaintiff's lumbar dissociation, lumbopelvic rhythm, increased tone of certain muscles, range of motion deficits, strength deficits, functional deficits, palpation, posture, and weight-bearing/gait analysis. (Tr. at 230-31). The ALJ's decision does not indicate whether he considered the report from the physical therapist in determining the severity of Plaintiff's

13

impairments or in her functionality. Even though the physical therapist's examination cannot establish a disability, it is certainly important to the issue of the severity of Plaintiff's impairment and functional effects. Therefore, the Court finds that the ALJ erred in failing to consider the reports from the physical therapist. In failing to properly consider Dr. Laufer's treatment records and the reports from a physical therapist, the ALJ's decision is not supported by substantial evidence, and this matter will be remanded.

### C. Other issues

Plaintiff's remaining arguments focus on a number of other issues that cannot be resolved until it is clear to the Court that the ALJ properly considered all of the relevant medical and other evidence in the record. Because the Court found that upon remand, the ALJ must reevaluate certain medical opinions and other evidence that contains impairment evidence, and that evidence may impact the Court's analysis of other elements of the ALJ's decision, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time.

### D. Other relief requested by Plaintiff

Plaintiff requests that the Court order the Commissioner to grant benefits, or alternatively reverse and remand this action. The Court has determined that this matter must be reversed and remanded for the Commissioner to reconsider certain medical evidence, and reevaluate Plaintiff's credibility. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (A court may award disability benefits "where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."). Therefore, the Court will reverse and remand this matter rather than award benefits.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

14

Court finds that the decision of the ALJ is not supported by substantial evidence, and upon remand the Commissioner should reevaluate the medical evidence. Further, the Commissioner shall reconsider Plaintiff's credibility relating to her pain.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical evidence, and Plaintiff's credibility.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on March 3, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties